UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLE L. HENDERSON,

                              Plaintiff,

                              DECISION AND ORDER

                              16-CV-6372L

                v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                              Defendant.
_____

**PRELIMINARY STATEMENT**

Plaintiff Nicole L. Henderson ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Dkt. #1).

On July 30, 2012, plaintiff filed an application for a period of disability and DIB under Title II of the Act, alleging disability beginning on October 1, 2008. (Tr. 31).[1] That application was denied on December 6, 2012. (Dkt. #8 at 101-12). On December 21, 2012, plaintiff requested and was granted a hearing before Administrative Law Judge Roxanne Fuller (the "ALJ"). (Tr. 113-19, 144-48). The ALJ conducted a video hearing on April 3, 2014, at which plaintiff and a vocational expert testified. (Tr. 31-44). In a decision dated June 20, 2014, the ALJ found that

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 8) utilize the internal Bates-stamped pagination assigned by the parties.

plaintiff was not disabled. (*Id.*). That decision became the final decision of the Commissioner when the Appeals Council denied review on April 1, 2016. (Tr. 1-4). The instant appeal followed.

The plaintiff has moved, and the Commissioner has cross moved, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion seeking remand (Dkt. #10) is granted, the Commissioner's cross motion for judgment dismissing the complaint (Dkt. #13) is denied, and the matter is remanded for further proceedings.

## DISCUSSION

### I. Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standard. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled[.]" *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The same level of deference is not owed to the Commissioner's conclusions of law. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court first examines the legal standards applied, and then, if the standards were correctly applied, considers the substantiality of the evidence. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

In examining plaintiff's claim, the ALJ applied the familiar five-step analysis applicable to disability determinations. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 1, 2008, the alleged onset date. (Dkt. #8 at 33). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease; asthma; fibromyalgia; chronic pain syndrome; and a history of polysubstance abuse. (*Id.*). At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal a listed impairment. (Dkt. #8 at 34).

Next, the ALJ determined that plaintiff retained the RFC to perform sedentary work[2] with certain limitations. Specifically, the ALJ found that plaintiff could: occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally balance, stoop, crouch, kneel, and crawl; frequently reach with both arms, including overhead; frequently, but not constantly, handle objects, "that is gross manipulation with both hands"; frequently, but not constantly, finger, "that is fine manipulation with both hands"; occasionally be exposed to irritants such as fumes, odors, dust, and gases; occasionally be exposed to poorly ventilated areas, chemicals, moving mechanical

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

3

parts, and unprotected heights; occasionally operate a motor vehicle; and perform simple, routine, repetitive tasks. (Tr. 36). At step four, the ALJ found that based on plaintiff's RFC, she was unable to perform her past relevant work as a cook. (Tr. 42). At step five, the ALJ relied on the testimony of vocational expert Thomas H. Heiman (the "VE"), and found that plaintiff is capable of performing other work that exists in significant numbers in the national economy. (Tr. 43). Specifically, the VE testified that plaintiff could work as a document preparer, microfilming (DOT 249.587-018), final assembler, optical goods (DOT 713.687-018), and addresser (DOT 209.587-010). (Tr. 43-44). Accordingly, the ALJ found that plaintiff was not "disabled" under the Act. (Tr. 44).

## DISCUSSION

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence and is based on errors of fact and law.

### I. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff's chief argument is that the ALJ made numerous errors in assessing her credibility, and thus improperly rejected plaintiff's testimony concerning the severity of her symptoms, resulting in an erroneous RFC determination.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where . . . [they are] supported by objection medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

"When rejecting subjective complaints, and ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

Here, the ALJ concluded that plaintiff's statements as to the intensity and frequency of her symptoms – and specifically her allegations of manipulative limitations and difficulty sitting, standing and walking due to pain – were not fully credible. (Dkt. #8 at 40). Evidence cited by the ALJ in support of that finding included: (1) examination findings showing intact strength, sensation and reflexes; (2) plaintiff's testimony that she had been "cleaning houses as a part-time job [for a portion of] the period at issue"; and (3) plaintiff's "activities of daily living," including engagement in activities such as personal care, washing dishes, doing laundry, and grocery shopping. (*Id.*).

Plaintiff argues – and the Court concurs – that the ALJ's credibility determination was compromised by unsupported interpretations of raw medical evidence, and several mischaracterizations of the record.

First, to the extent that the ALJ found that "intact strength, sensation and reflexes" undermined plaintiff's claims of fibromyalgia-related pain and weakness, it is well settled that an "absence of swelling joints or other orthopedic and neurologic deficits 'is no more indicative that a patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). *See also Mikus v. Berryhill*, 2017 U.S. Dist. LEXIS 53388 at *24 (N.D.N.Y. 2017) ("a sweeping and persistent dismissal of Plaintiff's complaints of pain because of the lack of objective evidence . . . is precisely what the Second Circuit has warned against whenever fibromyalgia is at play"). As such, the absence of

such signs cannot, as a matter of law, be relied upon to undermine plaintiff's subjective pain complaints, and the ALJ's reasoning to the contrary was in error.

Indeed, even assuming *arguendo* that a lack of neurological signs (e.g., intact strength, sensation and reflexes) was relevant to the ALJ's analysis in some other manner, the records to which the ALJ cited do not actually evidence a lack of neurological signs. In referring to plaintiff's "intact strength, sensation and reflexes during the period [at issue]," the ALJ cited to Exhibits 2F, 4F, 7F, 10F, 11F, 12F, 14F, 15F, 16F and 18F (Dkt. #8 at 40, 302-566). However, the bulk of these records include *no* objective findings concerning plaintiff's strength, sensation and reflexes, and many do not even pertain to a physical examination. (For example, Exh. 2F is an emergency room record describing treatment for a burned arm, 4F describes treatment for a sprained ankle, and 7F is a laboratory report).

Furthermore, to the extent that the ALJ relied on plaintiff's activities of daily living in rejecting her statements concerning the severity of her symptoms, the ALJ described "part-time" work as a housekeeper, and found that the plaintiff can "cook, clean, do laundry, shop, maintain her own care," etc. (Dkt. #7 at 40). However, the ALJ's characterization overlooks important details. For example, plaintiff's prior work as a housekeeper was significantly less than "part-time": it took place only two hours per week for a period of time, and ended due to plaintiff's symptoms. Plaintiff testified that her participation in her own "personal care" such as dressing and showering requires extensive physical assistance from family members, and any housekeeping is limited to light chores such as dish washing, with rest breaks every few minutes. Plaintiff grocery shops only when a neighbor or family member is able to drive her and assist her in the store. (Dkt. #8 at 65-66).

It is well settled that "[t]here is a critical difference between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job," *Harris v. Colvin*, 149 F. Supp. 3d 435, 444-45 (W.D.N.Y. 2016), and "[t]he fact that an appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity." *Mecklenburg v. Astrue*, 2009 U.S. Dist. LEXIS 108111 at *21-*22 (W.D.N.Y. 2009) (quoting *Walston v. Gardner*, 391 F.2d 580, 586 (6th Cir. 1967)). As such, where an ALJ has "mischaracterize[d] the plaintiff's ability to perform activities of daily living to her disadvantage" in determining plaintiff's credibility, remand is appropriate. *See Mecklenburg*, 2009 U.S. Dist. LEXIS 108111 at *21-*22. *Cf. White v. Commissioner*, 2016 U.S. Dist. LEXIS 63842 at *19-*20 (N.D.N.Y. 2016) (remand is appropriate where ALJ "mischaracterized Plaintiff's activities of daily living" in rejecting medical source statement as inconsistent with those activities).

Here, the ALJ clearly misunderstood or exaggerated the degree to which plaintiff could independently perform daily activities such as housework and personal care, and diminished her credibility findings on that basis in a manner which significantly altered and influenced her RFC finding. Remand is therefore appropriate.

## II. The ALJ's Assessment of the Medical Opinion Evidence of Record

The Court also notes that the ALJ gave no more than "little" weight to the medical opinion evidence of record bearing on plaintiff's nonexertional and postural limitations, including the opinion of consulting internist Dr. Harbinder Toor, who was the only acceptable medical source of record who purported to specifically assess those limitations. (Dkt. #8 at 385-89). The ALJ rejected Dr. Toor's opinion largely on the basis of "vague[ness]," based on his use of terms such as "moderate" and "severe," which the ALJ found insufficient to indicate "what the claimant could

7

or could not do in a work setting." (Dkt. #8 at 41). The ALJ likewise rejected the "opinion" of plaintiff's treating physician, Dr. Steven Lasser (Dkt. #8 at 491-92), which took the form of a treatment note which described plaintiff's "severe and disabling" hip, buttock and lower back pain due to severe sacroiliac joint dysfunction syndrome, but failed to meaningfully assess plaintiff's ability to perform the exertional requirements of work. (*Id*.). Finally, the ALJ gave no more than "little" weight to the physical RFC assessment of occupational therapist Ms. Maria C. Aguilera (Dkt. #8 at 574-82), because her findings concerning plaintiff's ability to sit, stand, lift, carry, etc., were more limiting than "any other examination of record," and because Ms. Aguilera is not an "acceptable medical source." (Dkt. #8 at 41).

Initially, the mere use of terms such as "moderate" and "severe" does not automatically render an opinion "too vague to constitute substantial evidence," particularly where "the examiner conducts a thorough examination and explains the basis for the opinion." *O'Bara v. Colvin*, 2017 U.S. Dist. LEXIS 93441 at *6 (W.D.N.Y. 2017). The Court observes that Dr. Toor's opinion, which finds, among other things, "moderate to severe limitations for standing, walking, squatting, bending and lifting," includes examination findings such as abnormal gait, difficulty in changing and rising from a chair, significantly impaired spinal flexion, numbness and tingling in extremities, and tenderness in the hips, legs and shoulders. (Dkt. #8 at 384-89).

Even assuming that Dr. Toor's opinion was properly characterized as "vague," the ALJ ultimately rejected *all* of the medical opinion evidence of record as to plaintiff's exertional and postural limitations. Although an ALJ may base an RFC assessment on evidence other than medical opinions, such as treatment notes and activities of daily living, the instant record lacked sufficient evidence to do so. *See Monroe v. Commissioner*, 676 Fed. Appx. 5, 9 (2d Cir. 2017) (unpublished opinion). As discussed above, to the extent that plaintiff's treatment notes contained

8

raw medical data, the ALJ was not entitled to rely upon it in determining the extent of plaintiff's fibromyalgia-related limitations, and the ALJ's analysis of plaintiff's daily activities was factually flawed.

In the absence of the medical opinions rejected by the ALJ, the instant record lacked evidence sufficient for the ALJ to reach an informed decision as to plaintiff's RFC. As such, the ALJ's RFC finding amounted to an improper substitution of her "own expertise or view of the medical proof [in place of] any competent medical opinion," and remand is appropriate. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). *See generally Moreau v. Berryhill*, 2018 U.S. Dist. LEXIS 4173 at \*33-\*34 (D. Conn. 2018) (where a medical opinion fails to assess a claimant's limitations or provide a permanent or function-by-function analysis of the plaintiff's capabilities, "the ALJ's duty to develop the record requires the ALJ to seek additional information" rather than rejecting the opinion as vague or incomplete).

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings (Dkt. #10) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is denied, and the matter is remanded for further proceedings. On remand, the ALJ is directed to recontact plaintiff's treating and examining physicians, and/or to obtain additional medical opinions specifically assessing plaintiff's exertional and/or postural limitations in specific and quantifiable

terms, as well as to engage in a reassessment of plaintiff's credibility in light of such evidence, with specific cites to supporting evidence of record.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      May 30, 2018.